**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-25-00009-CV**
_____

**IN RE GANESH VIDYALA, LLC D/B/A KIDDIE ACADEMY OF HARMONY**

---

**Original Proceeding**
**457th District Court of Montgomery County, Texas**
**Trial Cause No. 23-09-13629-CV**

---

**MEMORANDUM OPINION**

In this original proceeding, Relator, Ganesh Vidyala, LLC d/b/a Kiddie Academy of Harmony ("Harmony"), seeks mandamus relief from the trial court's order denying Harmony's motion for an independent medical examination in a suit that includes claims for personal injury. We stayed further trial court proceedings and obtained a response from the Real Parties in Interest, Mark Francis and Vivian Francis. We conditionally grant mandamus relief.

1

## Background

In the trial court, the Francises seek monetary relief over $1,000,000, including past and future reasonable and necessary medical expenses, pain and suffering, mental anguish, physical impairment and mental anguish damages for themselves and their child. They allege that in August 2023, employees working in Harmony's childcare facility left their toddler, E.F., alone in a dark bathroom for up to four hours. They allege E.F. is experiencing significant separation anxiety, developmental regression, significant distress, and anxiety.

The Francises' designation of experts identified Dr. George S. Glass, a licensed psychiatrist, as a retained expert to provide medical and psychological testimony about E.F.'s and her parents' medical and psychological conditions, treatment and medications, medical causation and injuries, including their medical and psychological injuries, past and future necessary and reasonable medical and psychological treatment and medications, past and future impairment, and past and future mental anguish and emotional distress. The Francises disclosed that at trial Dr. Glass may offer his opinion that E.F. has suffered some of the symptoms of Post Traumatic Stress Disorder, including being upset when exposed to reminders of the trauma, irritable outbursts, avoidance of external reminders, and hypervigilance.

Harmony filed a motion for the trial court to order that E.F. undergo an independent medical examination in psychiatry by Dr. Mitchell Alan Young, a

licensed psychiatrist who is board certified in Child, Adult, and Forensic Psychiatry and specializes in clinical, administrative, and forensic neuropsychiatry. Harmony argued E.F.'s mental condition is in controversy because the Francises are using E.F.'s mental condition in support of their claims and have designated a testifying expert to opine on the diagnosis and prognosis of E.F.

Harmony supplied a supporting declaration by Dr. Young. His examination would include a clinical interview, a mental status examination, and the administration of psychological instruments in common use under similar circumstances. The examination would include: a developmental, psychosocial, and sociocultural history; family history, neurodevelopmental history, including pre-existing, predisposing, precipitating, perpetuating, and protective factors; review of symptoms; and mental status examination employing play therapy techniques, including sensorium, communication and relatedness, behavioral disturbance, mood and affect, cognitive function, abnormalities of thought and perceptual disturbances. The initial evaluation to obtain background information would be with the parents only, which he estimated would be no longer than two hours. The entire examination of E.F., including a standardized developmental screening, would not take more than four hours. Dr. Young recommended that the first visit occur for half an hour or less so the child is familiar with the environment, and subsequent evaluations be held on two separate occasions to increase reliability of the evaluation.

The Francises responded that Harmony failed to demonstrate good cause for the examination in that Harmony failed to establish a nexus between the condition in controversy (emotional distress and mental anguish as opposed to a traumatic brain injury) and the examination sought. They objected that Dr. Young mentioned the types of examinations he intended to perform without identifying the specific tests he intended to administer. They objected that the location of the examination would be in neighboring Harris County, 32 miles from their home. They argued that Harmony had deposed Mark Francis and had the opportunity to question him regarding the child's injuries and his observations of their effect on his child.

In its reply to the Francises' response to Harmony's motion to compel an independent medical examination, Harmony argued Dr. Young's examination of E.F. was essential to evaluating the alleged damages and causation issues and, through the examination, Dr. Young would likely obtain information regarding E.F.'s understanding of the alleged events, as well as her cognitive and emotional development, which are relevant to the claim of mental anguish. They argued Dr. Young had provided specificity regarding his proposed clinical interview and mental status examination of E.F. They argued since the Francises' retained expert would testify that E.F. suffered post-traumatic stress disorder as a result of the incident, and that she may be more vulnerable to psychiatric problems and substance abuse, the proposed examination directly relates to the condition in controversy. Harmony

4

argued Dr. Young explained in his affidavit how restricting his analysis to a review of treatment records would be inadequate to properly address E.F.'s current level of behavioral or psychosocial functioning, that Dr. Young should not be required to rely solely upon Mark Francis's observations, and that denying an in-person evaluation would severely limit Dr. Young's ability to contradict the plaintiffs' expert.

On September 20, 2024, the trial court denied Harmony's motion to compel an independent medical examination of E.F.

In a motion for reconsideration, Harmony supplied a declaration from Dr. Young. In this declaration, Dr. Young identified specific tests that he intended to conduct, including: (1) Baley Scales of Infant and Toddler Development, Fourth Edition; (2) Behavioral Assessment for Children, Third Edition-BASC-3; (3) Social Responsiveness Scale, Second Edition - SRS-2; (4) Multidimensional Anxiety Scale for Children, Second Edition - MASC-2; (5) Pediatric ACEs and Related Life-events Screener (PEARLS); (6) Child Behavior Checklist; (7) PTSD Semi-Structured Interview and Observation Record; (7) Preschool Age Psychiatric Assessment; (8) PTSD Symptoms in Preschool Aged Children; (9) Traumatic Events Screening Inventory-Parents; and (10) Trauma Symptom Checklist for Young Children. Additionally, Harmony supplied an excerpt from Vivian Francis's deposition in

5

which she revealed that, in addition to their prior Zoom sessions, in October 2024 Dr. Glass performed an in-person examination of E.F. at his Houston office.

## Mandamus Standard

"Mandamus is an extraordinary remedy granted only when the relator shows that the trial court abused its discretion and that no adequate appellate remedy exists." *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding). A trial court abuses its discretion when its ruling amounts to a clear and prejudicial error of law, or if the trial court fails to correctly analyze or apply the law to the facts. *Id.* at 302–03. "The relator must establish that the trial court could have reasonably reached only one conclusion." *Id.* at 303. "The adequacy of an appellate remedy is determined by balancing the benefits and detriments of mandamus." *Id.* at 304. "This balance is heavily circumstantial." *Id.*

## Rule 204 Examination

Texas Rule of Civil Procedure 204.1 governs requests for the physical or mental examination of another party. *See* Tex. R. Civ. P. 204.1. The trial court may order a party to submit to a physical or mental examination by a qualified physician or to a mental examination by a qualified psychologist "only for good cause" when the physical or mental condition of a party is in controversy or the party responding to the motion has designated a psychologist as a testifying expert. *See id.* 204.1(c). The good-cause requirement of Rule 204.1 balances the movant's right to a fair trial

6

and the opposing party's right to privacy. *H.E.B. Grocery*, 492 S.W.3d at 303. To satisfy the good cause requirement, "the movant must (1) show that the requested examination is relevant to issues in controversy and will produce or likely lead to relevant evidence, (2) establish a reasonable nexus between the requested examination and the condition in controversy, and (3) demonstrate that the desired information cannot be obtained by less intrusive means." *Id.*

"When the existence, extent, and cause of an injury are in controversy, an exam intended to glean information regarding those issues will satisfy the relevance requirement." *In re Auburn Creek Ltd. P'ship*, 655 S.W.3d 837, 841–42 (Tex. 2022) (orig. proceeding) (citation omitted). There must be evidence that the requested examination is directly related to the condition in controversy. *Id.* at 842.

The Francises allege that because of being left alone in the bathroom for hours, E.F. is experiencing significant separation anxiety, developmental regression, significant distress, and anxiety, for which they have sued to recover damages for past and future necessary and reasonable medical and psychological treatment and medications, past and future impairment, and past and future mental anguish and emotional distress. The Francises disclosed in discovery that their retained expert, a licensed psychiatrist, would provide medical psychological testimony about E.F.'s medical and psychological conditions, treatment, and medications, medical causation, and injuries caused by Harmony. Their testifying expert has personally

7

examined E.F. He would testify that E.F. suffers from symptoms of post-traumatic stress disorder as a result of the incident, including being upset when exposed to reminders of the trauma, irritable outbursts, avoidance of external reminders, and hypervigilance. E.F.'s mental condition is in controversy, and she has retained a testifying expert. *See* Tex. R. Civ. P. 204.1(c).

The requested examination by Dr. Young will gather the information from E.F. and her parents to effectively opine on Dr. Glass's diagnosis of post-traumatic stress symptoms and E.F.'s alleged separation anxiety, developmental regression, significant distress, and anxiety. We conclude the requested examination is relevant. *See Auburn Creek Ltd. P'ship*, 655 S.W.3d at 841–42.

The requested examination would assess E.F.'s understanding of the alleged events as well as her cognitive and emotional development, which are relevant to the claim of mental anguish and alleged impairment of her psychological development. We conclude Harmony established a reasonable nexus between the requested examination and E.F.'s mental conditions. *See H.E.B. Grocery*, 492 S.W.3d at 303.

Dr. Young explained that without meeting and assessing E.F. in the same manner afforded E.F.'s treating clinicians and experts, he will be at a distinct disadvantage in his evaluation of E.F. Dr. Glass has personally interviewed Mark and Vivian Francis, performed telemedicine and in-person examinations of E.F., and has performed a mental status examination on all three. To effectively test Dr.

Glass's opinions and diagnoses, Dr. Young requires an examination that includes clinical interviews, a mental status evaluation, and the administration of psychological test instruments in wide and common use. We conclude Harmony demonstrated that the necessary information cannot be obtained through less obtrusive means. *See Auburn Creek Ltd. P'ship*, 655 S.W.3d at 842–43.

In balancing the benefits and detriments to determine whether mandamus relief is appropriate, we consider that Harmony's defense largely turns on challenging the cause, nature, and extent of the alleged mental anguish and psychological and developmental impairment, and that those issues will depend significantly on competing expert testimony. Allowing Harmony the same opportunity as the Francises' expert to fully develop and present his opinion is necessary to ensure a fair trial. We conclude Harmony has shown that it lacks an adequate remedy by appeal. *See Auburn Creek Ltd. P'ship*, 655 S.W.3d at 843.

Conclusion

We conclude the trial court abused its discretion by denying Harmony's motion for an independent medical examination by Harmony's retained expert psychiatrist and Harmony lacks an adequate remedy by appeal. Accordingly, we lift our temporary order of March 25, 2025, and we conditionally grant mandamus relief. We are confident that the trial court will vacate its order of September 20, 2024, and order that E.F. submit to an independent medical examination to be conducted by

9

Dr. Young at his Houston office, including pre-examination clinical interviews of Mark and Vivian Francis and an in-person examination of E.F. The writ shall issue only if the trial court does not comply.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on January 21, 2025
Opinion Delivered May 22, 2025

Before Golemon, C.J., Wright and Chambers, JJ.